Case 5:23-cv-00045   Document 4   Filed on 06/27/23 in TXSD   Page 1 of 6

United States District Court
Southern District of Texas
**ENTERED**
June 28, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| KRISTAL QUE LANSFORD,<br>　　Plaintiff, | §<br>§<br>§ | |
| VS. | § | CIVIL ACTION NO. 5:23-CV-00045 |
| | § | |
| LAREDO COLLEGE<br>and<br>MARISELA RODRIGUEZ-TIJERINA<br>and<br>JACKIE LEVEN-RAMOS<br>and<br>GEORGE RUSSELL MEURER,<br>　　Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |

## REPORT AND RECOMMENDATION

Pending before the Court is Plaintiff's Application to Proceed in District Court Without Prepaying Fees or Costs (Motion to Proceed In Forma Pauperis, or "IFP"). (Dkt. No. 2.) The Court **RECOMMENDS** that Plaintiff's Motion (Dkt. No. 2) be **DENIED**.

Plaintiff, proceeding *pro se,* filed her Complaint (Dkt. No. 1) along with her Application to Proceed in District Court Without Prepaying Fees or Costs (Dkt. No. 2) that included income and asset information. The Court has sufficient information before it to evaluate Plaintiff's financial status.

The IFP statute, "[28 U.S.C. §] 1915(a)[,] is intended to provide access to federal courts for plaintiffs who lack the financial resources to pay any part of the statutory filing costs." *Prows v. Kastner,* 842 F.2d 138, 140 (5th Cir. 1988). "There is no absolute right to be allowed to proceed

1

in forma pauperis in civil matters; rather it is a privilege extended to those unable to pay filing fees when the action is not frivolous or malicious." *Startti v. U.S.,* 415 F.2d 1115, 1116 (5th Cir. 1969).

"[A] district court may order users of the courts to pay a portion of the filing fees when they are financially able to do so. *Prows v. Kastner,* 842 F.2d at 140 (citing *Williams v. Estelle,* 681 F.2d 946 (5th Cir. 1982)). To determine whether the payment of fees would cause an undue financial hardship, the Court must examine the financial condition of a plaintiff. *Id.* "In making the [IFP] determination, the Court may consider the total monetary resources available to assist Plaintiff." *Bruton v. Colvin*, No. 4:14-CV-083-A, 2014 WL 840993, at *1 (N.D. Tex. Mar. 4, 2014). There is a "well established rule" that granting or denying IFP in civil cases is left to the "sound discretion" of the district court. *Willard v. U.S.*, 299 F.Supp. 1175, 1177 (N.D.Miss.1969), *aff'd,* 422 F.2d 810 (5th Cir. 1970).

A review of the financial information in Plaintiff's application reflects that her average monthly gross income was $3,958.75 and average take-home income during the past twelve months was $3,630.01 (adding Plaintiff's average monthly wages calculated from her wages per semester "1/23-5/23 [sic]" to her additional sources of money—her retirement (calpers) pension and unemployment).[1] Thus, Plaintiff's annual gross income is approximately $47,504.97 and take-home income is approximately $43,560.15.[2] Plaintiff also states that she has $127.25 in cash or in a checking or savings account.

---

[1] This calculation averages from the recurring sources of money Plaintiff provided for in her application, as well as her semester pay or wages from January through May 2023, extended throughout the year.

[2] Plaintiff receives $756.54 monthly from her pension, and between $167 to $230 *per week* from unemployment, averaging $203.33 per week, which she says "[w]ill increase to $549.00 per week after [the] end of Spring semester 5/1/23" and has "$3,420 remaining." This raise is expected after Plaintiff filed her application for IFP, "after [the] end of Spring semester 5/1/23." The Court's income calculation does not account for the expected raise in Plaintiff's unemployment benefits.

Plaintiff's annualized sources of money from after May 1 or May 23, 2023,[3] assuming Plaintiff is no longer receiving income for a semester of school, is approximately $2,952.54 monthly, which equates to approximately $35,430.48 yearly.

She lists her spouse as her dependent, because he is "[c]urrently unable to work due to medical issues (multiple surgeries) and states that she is currently the "sole provider for all household and medical expenses."

Plaintiff's total regular monthly expenses are approximately $2,375.54 (calculated from her "regular monthly expenses" section, which includes her house payment, utilities, and her Ascribe, Upstart, and Affirm loan payments). Plaintiff also lists that she has debts or financial obligations. She has approximately $8,400 in credit card debt, a $13,000 balance on her "Ascribe Consolidation Loan," for which her monthly payment has been reduced from $840.00 to $240.00 per month until October 2023 due to financial hardship, and approximately $1,000 in unpaid medical bills and insurance, for which Plaintiff has a $100.00 monthly premium. Plaintiff's financial obligations that include monthly payments,[4] added to her listed total regular monthly expenses, equal approximately $2,715.54.

"Other courts have utilized the applicable poverty guidelines to assess applicants' financial condition." *Mann v. City of Moss Point*, No. 1:14CV237-KS-MTP, 2014 WL 4794544, at *2 (S.D. Miss. Sept. 25, 2014) (accepting the report and recommendation for denial of IFP); *see, e.g.*, *Bruton v. Colvin*, 2014 WL 840993, at *1 ("Plaintiff's total annual household retirement income and unemployment payments totals $54,900, far above the poverty level for a family of five.");

---

[3]  The Court notes that Plaintiff provides two different dates for the end of the Spring semester—first, 5/23/23, then, 5/1/23.
[4]  Plaintiff's approximately $8,400 alleged credit card debt is not included here, as Plaintiff does not list a regular required payment. It is unknown whether Plaintiff's Ascribe, Upstart, or Affirm loan payments are in regard to Plaintiff's credit card debt, or other purchases or debt.

*Nelson v. Louise*, No. CIV.A. 10-827-RET, 2011 WL 3648632, at *1 (M.D. La. July 27, 2011), *report and recommendation adopted,* No. CIV.A. 10-827, 2011 WL 3650285 (M.D. La. Aug. 17, 2011) ("[T]he court has calculated that the combined income of this household is $3,350.00, or $40,200.00 per year, which is far more than the $29,990.00 set by the 2011 HHS Poverty Guidelines for a household of six individuals."); *Walker v. University of Texas Medical Branch,* No. 1:08-CV-417, 2008 WL 4873733, at *1 (E.D. Tex. Oct. 30, 2008) ("[The plaintiff's] family income substantially exceeds the official poverty guidelines for a family of two, which is $14,000."). The applicable poverty guideline for a family of two is $19,720 annually. *See* Annual Update of the HHS Poverty Guidelines, 88 Fed. Reg. 3424 (Jan. 19, 2023).

Whether she is employed or unemployed, Plaintiff's income exceeds the poverty level. Moreover, her income and sources of money exceed her expenses. Plaintiff also states that she owns one 2015 Toyota Tacoma and a house. Plaintiff did not list the value of the vehicle or her property. Courts have denied IFP applications even where the plaintiffs' expenses exceed their income because the plaintiffs had other assets. *See, e.g.*, *Slaughter v. Vilsack,* 2013 WL 1704909, at *1 (M.D. Ga. April 19, 2013) (denying IFP where the plaintiff had "several assets which he asserts value over $225,000").

Plaintiff's financial status allows her to pay the filing fee in order to commence this action without undue hardship if given a reasonable amount of time to tender the requisite amount.

The Court therefore **RECOMMENDS** the following, that:

1. Plaintiff's Motion to Proceed IFP (Dkt. No. 2) be **DENIED.**

2. Plaintiff be given sixty (60) days to pay all of the costs associated with the filing of this lawsuit, and

3. Should Plaintiff fail to timely pay all of the costs associated with the filing of this

lawsuit, this matter be dismissed without prejudice and without further notice.

The Court **DIRECTS** the Clerk of Court to send a copy of this Report and Recommendation to Plaintiff via any receipted means.

IT IS SO ORDERED.

SIGNED this June 27, 2023.

Diana Song Quiroga
United States Magistrate Judge

### Warnings

The parties may file objections to this Report and Recommendation, unless they waive the right to do so.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections.  *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982) (en banc)).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after being served with a copy of the Report— or the party's waiver of the right to do so—shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations and, except upon grounds of plain error, shall bar the party from appellate review of proposed factual findings and legal conclusions

accepted by the District Court to which no objections were filed.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn,* 474 U.S. 140, 150-53 (1985); *Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).